IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71437-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | ORDER GRANTING MOTION |
| | ) | TO PUBLISH |
| SHANE AUSTIN STACY, | ) | |
| | ) | |
| Appellant. | ) | |

Appellant Shane Austin Stacy filed a motion to publish the opinion filed on May 12, 2014 in the above case and the respondent has filed an answer to the motion. A majority of the panel has determined that the motion should be granted;

Now, therefore, it is hereby

ORDERED that appellant's motion to publish the opinion is granted.

DATED this 4th day of June, 2014.

FOR THE COURT:

_Schindler, J_

Judge

COURT OF APPEALS DIV 1
STATE OF WASHINGTON
FILED
2014 JUN -1 AM 11:21



COURT OF APPEALS
STATE OF WASHINGTON

2014 MAY 12 AM 9: 13

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71437-6-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| SHANE AUSTIN STACY, | ) | |
| | ) | |
| Appellant. | ) | FILED: May 12, 2014 |

SCHINDLER, J. — A jury convicted Shane Austin Stacy of assault in the second degree by strangulation of Andrea Holde, assault in the third degree of a police officer, and assault in the fourth degree of a hospital security officer. On appeal, Stacy argues the court abused its discretion by denying his motion to introduce evidence under ER 405(b) and violated his right to present his defense by excluding a statement he made to police officers while in custody. Stacy also argues the court erred in refusing to give his proposed jury instruction on involuntary intoxication and the instruction the court gave misstates the law. In addition, Stacy claims the court violated his right to be present and his right to a public trial by answering a question from the jury. We affirm.

FACTS

At around 7:00 p.m. on February 24, 2012, Shane Austin Stacy and his wife Mary Beth arrived at a party hosted by the local chapter of the International Longshore and

Warehouse Union (ILWU) at the Monticello Hotel in Longview. Over 200 people attended the party. One bar was located in the ballroom and the other bar in the lounge. Guests were purchasing drinks for each other and some guests brought alcohol from their hotel rooms to the party.

Andrea Holde is a member of the ILWU Women's Auxiliary. Holde arrived at the hotel at approximately 11:00 p.m. to help clean up after the party ended. Holde is good friends with Heather Robinson. Karen Mitchell told Holde that earlier that evening, Stacy's wife Mary Beth was kissing Heather's husband Mike Robinson.

Holde confronted Mary Beth, asking her if she kissed Robinson and if she "likes being a home-wrecking whore." Mary Beth denied kissing Robinson. Holde then found Stacy and asked him whether it is " 'okay that your wife was making out with Mike Robinson.' " Holde also asked Stacy, " 'Are you guys swingers?' " Stacy left and went to talk to Mary Beth.

Approximately a minute later, Stacy walked over to Holde. Stacy was "furious" and shouted at Holde, " 'Why are you lying? Why are you lying?' " Stacy then grabbed Holde by the throat, choking her and then slamming her into the wall. Bartender Kyle Wharton called 911.

In an attempt to pull Stacy off of Holde, longshoreman Jimmy Meadows grabbed Stacy from behind and put him in a "sleep hold." Because Stacy still had a grip on Holde's neck, Meadows, Holde, and Stacy ended up on the floor. A number of men tried to pull Stacy off Holde. After someone was finally able to pull Holde away, Meadows let go of Stacy.

Police officers from the Longview Police Department arrived at the hotel at

2

approximately 11:15 p.m. Officer Timothy Deisher saw "a couple of guys" holding Stacy down on the ground. Officer Deisher said that Stacy was struggling and cursing. When Officer Deisher bent down to take hold of Stacy's legs, Stacy kicked Officer Deisher in the nose and lip. Officer Timothy Huycke helped Officer Deisher handcuff Stacy. Stacy was aggressive and angry, saying everyone was going to hell. Before taking Stacy to jail, the police took him to St. John Medical Center.

When they arrived at the hospital, Stacy was uncooperative and refused to get out of the patrol car. Hospital security officers Kyle Roush and Michael Derry helped the police officers pull Stacy out of the patrol car and put him in a wheelchair. When the health care providers attempted to take Stacy's blood pressure, Stacy began yelling and cursing, and kicked hospital security officer Roush on the right side of his neck and jaw.

The State charged Stacy with assault in the second degree by strangulation of Andrea Holde in violation of RCW 9A.36.021(1)(g), assault in the third degree of Officer Timothy Deisher in violation of RCW 9A.36.031(1)(g), and assault in the fourth degree of hospital security officer Kyle Roush in violation of RCW 9A.36.041(1).

More than 25 witnesses testified during the four-day jury trial, including Holde, one of the bartenders at the Monticello Hotel, a number of longshoremen who attended the party, police officers, hospital staff, and Stacy. The defense theory at trial was that Stacy unknowingly ingested drugs.

Bartender Kyle Wharton testified that he served Stacy and his wife "tap beer, and I think they may have had shots, too." Wharton testified that he never added anything to the drinks and did not see anyone suspicious at the bar. Wharton said guests were buying drinks for each other and there was a "high-flow of drinks[,] everybody was

3

buying everybody drinks, . . . they were celebrating." Wharton testified it was hard to keep track of how much everyone was drinking:

> Q.  . . . . Were you watching the comings and goings at the party?
> A.  As much as possible, but it was really, really busy. . . . [I]t's a high-flow of drinks.  So, there's -- there's a lot of drinks going out.  So, it's -- it was a busy night.
> Q.  Okay.  Was it hard to keep track of what everyone was drinking?
> A.  By --
> Q.  By the amount that they had?
> A.  -- like -- yes.

Wharton also testified that a number of people were bringing their own alcohol to the party:

> [T]here was a ton of the red, cheap party cups that were flowing through from -- because they rented a bunch of motel rooms and hotel rooms, and people were bringing in the red party cups from every -- every direction. And I couldn't keep up with that.

Wharton said that based on his experience as a bartender, "alcohol affects people in different ways. . . . [S]ome other people can be fine one second, and then have two more, and then just [be] completely gone."

During cross-examination, the defense introduced into evidence a copy of the bar tab showing that Stacy purchased five beers and a number of mixed drinks at the hotel ballroom bar.

Several officers testified that Stacy was extremely intoxicated.  Officer Deisher told the jury that when he first saw Stacy, he had "bloodshot and watery eyes, he was yelling things, his speech seemed slurred.  There was obviously a strong odor of alcohol or intoxicants about his person."  Officer Deisher testified that he is trained to detect signs of drug use and that he observed no signs of drug use during his interaction with

4

Stacy.

Officer Huycke testified that he smelled "the strong odor of an alcoholic beverage coming from [Stacy]. He was yelling many profanities, among other things, and as he's yelling, his speech seems to be slurred."

Officer Rocky Epperson testified he did not see any signs of drug intoxication. Officer Epperson testified that Stacy was "very intoxicated" and had "[v]ery slurred speech, he was staggering; his eyes were very watery, bloodshot; and his movements were slow. And, there was the obviously [sic] odor -- overpowering odor of alcohol."

Hospital security officer Michael Derry testified that he and Stacy were "acquaintances through my wife at her work" and he attended Stacy's wedding. Derry said that Stacy recognized him and called him by name at the hospital:

> A. . . . Shane did recognize who I was and repeatedly stated that, "Mike, you know me."
> Q. Okay. Did you introduce yourself as Mike?
> A. I didn't have to.
> Q. Okay. Did he call you by name first?
> A. Yes.

Hospital security officer Kyle Roush testified that Stacy was "obstinate, he was very uncooperative, refused to follow any of our instructions, refused to allow us to do vital signs . . . . He was continually using the F-word, telling us to get out of his room." Roush testified that while the nurse and medical technician were attempting to take Stacy's blood pressure, Stacy "was lying on the bed, and I was basically leaning over him to lift him back up into a seated position so that they could complete their vital signs. When I did that, he raised his left leg up and kicked me on the right side of the neck and jaw area."

The defense called several people who attended the party to testify, including

Kelly Harris, Ryan Sherman, Michelle Brister-Williamson, and Shelly Porter. Harris testified that Stacy did not appear intoxicated at 9:30 p.m. Sherman said that when he saw Stacy between 10:00 p.m. and 10:30 p.m., Stacy did not appear intoxicated. Brister-Williamson testified that before the fight broke out, Stacy did not appear intoxicated, but after the fight, "he was all tensed up, and like, stiff. And his face was, like, distorted, that I didn't recognize that it was him. . . . He was non-responsive. He -- he was making all kinds -- he was just making these, like, growling, gurgling, weird noises." Brister-Williamson described Stacy as "look[ing] like he was possessed." Porter also testified that Stacy did not appear intoxicated at 10:45 p.m. but 10 minutes later, Stacy did not recognize her and "looked like a crazy man." Stacy's friends Ted Aadland, Sarah Sheldon, Wendy Fleckenstein, and Marion Lee testified that Stacy had a reputation for peacefulness and honesty.

The defense also presented evidence that because Stacy drank only five beers that night, the only explanation for his behavior was that someone at the party must have slipped him a drug. Stacy testified that he only drank beer, and his wife drank mixed drinks and bought other drinks for friends. Stacy said that he did not have any memory of the night from around 9:00 p.m. until he woke up in jail. Stacy testified that when he woke up in jail, he "had no recollection of what had happened" and did not know why he was there. Stacy told the jury that he believed someone slipped something into his drink.

On cross-examination, Stacy said that he only remembered having three beers before 9:00 p.m., but admitted that he could have had more to drink after 9:00 p.m.:

> Q.     . . . [Y]ou agree that you have -- you don't have a memory
> after a certain point, correct?

6

A. Correct.
Q. So, it's possible that somebody did buy you a drink that you just don't remember?
A. It's possible.

Stacy also admitted that he did not know of anyone with a motive to drug him:

Q. . . . . Is it your belief that somebody slipped something into your drink?
A. That's the only explanation that I can think of for what happened to me.
Q. Okay. Who?
A. If I knew, I wouldn't be sitting here.
Q. Who do you think?
A. I have no idea.
Q. Okay. So, there was nobody really there that night that you can pinpoint of having any bad blood with you to have done this to you, right?
A. I couldn't tell you.

Forensic scientist Dr. Raymond Grimsbo and pharmacist Nicholas Rotello testified as expert witnesses for the defense. Dr. Grimbso testified that assuming Stacy drank only five beers in four hours, he would expect his blood alcohol content to be .03 to .05 percent, below the legal limit of .08. According to Dr. Grimsbo, Stacy's behavior could have been the result of a stimulant. But Dr. Grimsbo admitted his opinion was "[s]peculative" and without a toxicology report, he could not testify to a reasonable degree of medical certainty that Stacy had ingested any drugs. Dr. Grimsbo also testified that alcohol can cause a person to black out but could not recall if blackouts were associated with stimulants like methamphetamine.

Rotello testified that Stacy was "definitely under the influence of another agent," specifically, a stimulant. Rotello based his opinion on "witness reports, testimony, police officers, people from Monticello Hotel; information from the hospital, [registered nurse]s, things like that; comments, general comments, that were provided to the police

department." Rotello said that the stimulant "possibly could be" methamphetamine. Rotello testified that both methamphetamine and alcohol can cause amnesia or blackouts. But on cross-examination, Rotello admitted that he could not say with a reasonable degree of certainty that Stacy had any drug in his system.

At the conclusion of the evidence, the State submitted proposed jury instructions on voluntary intoxication and involuntary intoxication. Consistent with 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 18.10, at 282 (3d ed. 2008) (WPIC), the proposed voluntary intoxication instruction states:

> No act committed by a person while in a state of voluntary intoxication is less criminal by reason of that condition. However, the evidence of intoxication may be considered in determining whether the defendant acted with intent.

The State's proposed involuntary intoxication instruction states:

> Involuntary Intoxication is a defense to a charge of Assault if:
> (a)    The defendant was given alcohol or drugs by force or fraud and
> (b)    The alcohol or drugs prevented the defendant from forming the intent to assault.
> The defendant has the burden of proving this defense by a preponderance of the evidence. Preponderance of the evidence means that you must be persuaded, considering all the evidence in the case, that it is more probably true than not true. If you find that the defendant has established this defense, it will be your duty to return a verdict of not guilty as to a specific charge. Because a separate crime is charged in each count, you must decide each count separately. Your verdict on one count should not control your verdict on any other count.
> The defense of involuntary intoxication is not available if the defendant voluntarily ingested alcohol or drugs. If you find the defendant voluntarily ingested alcohol and/or drugs, use the instruction on voluntary intoxication, Instruction number.____.

Stacy also proposed a jury instruction on involuntary intoxication and objected to giving the State's proposed instruction on involuntary intoxication. Stacy argued the State had the burden of disproving involuntary intoxication beyond a reasonable doubt.

8

The court disagreed, and gave a modified version of the instruction proposed by the State.[1]

During deliberations, the jury submitted a written question asking, "What date was the Defense Hired for the defendant?" The "Question from the Deliberating Jury and Court's Response" form shows the question was received at 1:10 p.m. on July 13, 2012. "After affording all counsel/parties opportunity to be heard," at 1:15 p.m., the court responded, "You must rely on the evidence presented to you in the course of the trial."

The jury found Stacy guilty as charged of assault in the second degree of Holde, assault in the third degree of police officer Deisher, and assault in the fourth degree of hospital security officer Roush.

## ANALYSIS

### 1. ER 405(b)

The trial court ruled that Stacy could introduce evidence of his reputation for peacefulness but did not allow specific instances of conduct evidence under ER 405(b). Stacy argues the court abused its discretion by excluding specific instances of conduct showing his peaceful character under ER 405(b). Specifically, Stacy sought to introduce evidence that he had not been in a fight since eighth grade.

The admissibility of evidence is within the discretion of the trial court. State v. Atsbeha, 142 Wn.2d 904, 913, 16 P.3d 626 (2001). We review the decision to exclude evidence for abuse of discretion. Atsbeha, 142 Wn.2d at 913-14. A trial court abuses

---

[1] The jury instruction on involuntary intoxication did not include the following language from the last paragraph of the State's proposed instruction:

The defense of involuntary intoxication is not available if the defendant voluntarily ingested alcohol or drugs. If you find the defendant voluntarily ingested alcohol and/or drugs, use the instruction on voluntary intoxication, Instruction number.___.

9

its discretion when its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. State v. Finch, 137 Wn.2d 792, 810, 975 P.2d 967 (1999).

"Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." ER 404(a). Evidence of specific instances of conduct is admissible under ER 405(b) only if the "character or a trait of character" is "an essential element of a charge, claim, or defense." "For character to be an essential element, character must itself determine the rights and liabilities of the parties." State v. Kelly, 102 Wn.2d 188, 197, 685 P.2d 564 (1984).

We conclude the court did not abuse its discretion by excluding evidence of specific instances of conduct to prove peacefulness. Character is not an essential element of any charge, claim, or defense for the crime of assault. State v. Mercer-Drummer, 128 Wn. App. 625, 632, 115 P.3d 454 (2005).[2]

2. Right to Present Defense

Stacy claims exclusion of a statement he made to police after being booked into jail violated his right to present his involuntary intoxication defense.

A defendant in a criminal case has a constitutional right to present a defense. State v. Mee Hui Kim, 134 Wn. App. 27, 41, 139 P.3d 354 (2006). But the constitutional right to present evidence is not unfettered. A defendant does not have a right to introduce irrelevant or inadmissible evidence. State v. Rehak, 67 Wn. App. 157, 162, 834 P.2d 651 (1992).

---

[2] Without citation to relevant authority, Stacy also argues "evidence of specific acts tending to prove peacefulness were an essential part of the defense of involuntary intoxication." Case law does not support his argument. See Mercer-Drummer, 128 Wn. App. at 632.

The State called Officer Brian Price to testify at trial. On cross-examination, Officer Price testified that while Stacy was in a holding cell, Stacy asked him "what he was doing there, because he had no idea." The court sustained the State's hearsay objection and instructed the jury to disregard the testimony that Stacy told Officer Price "he had no idea" why he was in jail. Without objection, the defense attorney then asked Officer Price, "What did Mr. Stacy ask you?" In response, Officer Price testified, "He asked us why he was in jail."

Officer Price testified, in pertinent part:

> Q. Did you have contact with the Defendant later that night at the jail?
> A. Yes, I did.
> Q. And tell me about that contact.
> A. Well, . . . Officer Blanchard . . . and I were there for an unrelated case. And, Mr. Stacy was in one of the holding cells, and he had asked us what he was doing there, because he had no idea.
> Q. Okay.
>     [PROSECUTOR]: Objection, Your Honor, to the last part as hearsay.
>     JUDGE WARNING: Okay. I'll sustain as to the last comment about him not knowing why.
>     [DEFENSE COUNSEL]: Okay. Do --
>     [PROSECUTOR]: And Your Honor, we'd ask for an instruction to disregard that.
>     JUDGE WARNING: The jury should disregard that last part of the answer. Alright. [Defense counsel], anything further?
>     [DEFENSE COUNSEL]: Yes, I -- I want to make [sure] they understand what the last part of the answer was and what they can consider.
>     JUDGE WARNING: Okay. Why don't you re-ask the question?
> Q. What did Mr. Stacy ask you?
> A. He asked us why he was in jail.
> Q. Okay. And when he asked you why he was in jail, was he in a cell?
> A. Yes, he was.

At the conclusion of the testimony, defense counsel agreed to excuse and release

Officer Price from the subpoena.

For the first time on appeal, Stacy argues the statement he made to Officer Price that he had "no idea" why he was in jail was admissible under ER 801(d)(1)(ii).[3] We do not consider an evidentiary error raised for the first time on appeal. State v. Kirkman, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). In any event, because there was no express or implied charge of recent fabrication when Officer Price testified during the State's case in chief, the statement was not admissible under ER 801(d)(1)(ii).

3. Involuntary Intoxication Jury Instruction

Stacy contends the court erred in refusing to give his proposed instruction on involuntary intoxication, and the jury instruction the court gave misstates the law. Stacy asserts the court erred in failing to define the term "fraud," and the instruction the court gave did not state that involuntary intoxication is a complete defense to the charged crime and improperly used the standard for voluntary intoxication. Stacy claims the refusal to give his proposed involuntary intoxication instruction and the erroneous jury instruction the court gave denied him the right to a fair trial.

We review alleged errors of law in jury instructions de novo. State v. Barnes, 153 Wn.2d 378, 382, 103 P.3d 1219 (2005). " 'Jury instructions are sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law.' " Keller v. City of Spokane, 146 Wn.2d 237, 249, 44 P.3d 845 (2002) (quoting Bodin v. City of Stanwood, 130

---

[3] ER 801(d)(1) provides that a statement is not hearsay if
[t]he declarant testifies at the trial or hearing and is subject to cross examination concerning the statement, and the statement is (i) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (ii) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, or (iii) one of identification of a person made after perceiving the person.

Wn.2d 726, 732, 927 P.2d 240 (1996)). If a jury instruction correctly states the law, the trial court's decision to give the instruction will not be disturbed absent an abuse of discretion. State v. Aguirre, 168 Wn.2d 350, 364, 229 P.3d 669 (2010). We also review the trial court's refusal to give a jury instruction for an abuse of discretion. State v. Buzzell, 148 Wn. App. 592, 602, 200 P.3d 287 (2009).

Here, the court instructed the jury on both voluntary intoxication and involuntary intoxication. Voluntary intoxication is not a complete defense to a crime. State v. Coates, 107 Wn.2d 882, 891, 735 P.2d 64 (1987).[4] "Voluntary intoxication does not excuse the criminality of the act but it can render the defendant incapable of forming the specific intent necessary for conviction of the crime." State v. Mriglot, 88 Wn.2d 573, 576 n.2, 564 P.2d 784 (1977). "[E]vidence of voluntary intoxication is relevant to the trier of fact in determining in the first instance whether the defendant acted with a particular degree of mental culpability." Coates, 107 Wn.2d at 889. The jury instruction the court gave on voluntary intoxication states:

> No act committed by a person while in a state of voluntary intoxication is less criminal by reason of that condition. However, the evidence of intoxication may be considered in determining whether the defendant acted with intent.[5]

Unlike voluntary intoxication, "involuntary intoxication is a complete defense" to a crime, "albeit a disfavored one." Mriglot, 88 Wn.2d at 575. The supreme court in Mriglot held that involuntary intoxication "must rise to the level of insanity." Mriglot, 88

---

[4] RCW 9A.16.090 provides:

No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his or her condition, but whenever the actual existence of any particular mental state is a necessary element to constitute a particular species or degree of crime, the fact of his or her intoxication may be taken into consideration in determining such mental state.

[5] The court gave the pattern instruction on voluntary intoxication. See WPIC 18.10.

Wn.2d at 575.

> "Involuntary intoxication, on the other hand, does constitute a defense if it puts the defendant in such a state of mind . . . that he does not know the nature and quality of his act or know that his act is wrong, in a jurisdiction which has adopted the M'Naughten test for insanity."

Mriglot, 88 Wn.2d at 575[6] (quoting W. LaFave & A. Scott, Handbook on Criminal Law § 45, 347-48 (1972)).[7] "[O]nce a defendant has shown that the degree of his involuntary intoxication meets the appropriate insanity test, his criminal capacity is vitiated and the jury never reaches the issue of specific intent." Mriglot, 88 Wn.2d at 576 n.2. A defendant must prove the defense of involuntary intoxication by a preponderance of the evidence. State v. Deer, 175 Wn.2d 725, 736, 287 P.3d 539 (2012).

The court instructed the jury that involuntary intoxication is a defense to assault if the defendant proves by a preponderance of the evidence that Stacy was given drugs by force or fraud, and the drugs prevented him from forming the intent to assault. The jury instruction the court gave on involuntary intoxication states:

> Involuntary intoxication is a defense to a charge of Assault if:
> (a) The defendant was given alcohol or drugs by force or fraud; and
> (b) The alcohol or drugs prevented the defendant from forming the intent to assault.
> The defendant has the burden of proving this defense by a preponderance of the evidence. Preponderance of the evidence means that you must be persuaded, considering all the evidence in the case, that it is more probably true than not true. If you find that the defendant has established this defense, it will be your duty to return a verdict of not guilty as to a specific charge. Because a separate crime is charged in each

---

[6] (Alteration in original.)

[7] Washington follows the M'Naghten's Case, 10 Clark & Fin. 200, 210, 8 Eng. Rep. 718, 722 (H.L. 1843), rule for determining insanity, which has been codified at RCW 9A.12.010. See State v. Klein, 156 Wn.2d 102, 113, 124 P.3d 644 (2005) (citing M'Naghten's Case, 10 Clark & Fin. at 210, 8 Eng. Rep. at 722).

count, you must decide each count separately. Your verdict on one count should not control your verdict on any other count.

The court refused to give Stacy's proposed instruction on involuntary intoxication. The jury instruction proposed by the defense states:

> Involuntary intoxication is a defense to the crime charged. "Involuntary intoxication" means intoxication brought about by force, or fraud, or some other means not within the control of the defendant. Involuntary intoxication absolves the defendant of any criminal responsibility.

First, Stacy argues the court should have defined "involuntary intoxication" as "by force, or fraud, or some other means not within the control of the defendant." The trial court did not abuse its discretion by refusing to give Stacy's proposed instruction or instruct the jury on the meaning of "force or fraud." "A trial court is not required to give an instruction which is erroneous in any respect." State v. Hoffman, 116 Wn.2d 51, 110-11, 804 P.2d 577 (1991). See also State v. Twitchell, 61 Wn.2d 403, 410, 378 P.2d 444 (1963) ("It is not error to refuse an instruction which incorrectly states the law."). Involuntary intoxication is intoxication caused by force or fraud. See State v. Hutsell, 120 Wn.2d 913, 920, 845 P.2d 1325 (1993) (citing Seattle v. Hill, 72 Wn.2d 786, 435 P.2d 692 (1967) (defining "voluntary intoxication" as intoxication not caused by force or fraud)).

Further, "whether the words used in an instruction require further definition is a matter of judgment to be exercised by the trial court." State v. O'Donnell, 142 Wn. App. 314, 325, 174 P.3d 1205 (2007). "Trial courts must define technical words and expressions used in jury instructions, but need not define words and expressions that are of ordinary understanding or self-explanatory." State v. Brown, 132 Wn.2d 529, 611-12, 940 P.2d 546 (1997). Here, the court did not abuse its discretion in refusing to

15

give Stacy's proposed involuntary intoxication instruction.[8] The court concluded "fraud" is a term of common understanding. The court ruled, in pertinent part:

> "Fraud" is a term of common understanding. It doesn't require further definition. I think, certainly, the argument that you're making, the -- provided the intoxicants -- provided by means outside of his control is a -- an appropriate argument under the definition of fraud, can and should be made. And I think that's sufficient, that term is sufficient to let the jury understand that is an appropriate defense and not to confuse them. So, that's the reason for not giving that additional language.

Next, Stacy argues the instruction incorrectly used the standard for voluntary intoxication and does not clearly state that involuntary intoxication is a complete defense. We agree the involuntary intoxication instruction the court gave erroneously uses the standard for voluntary intoxication, not involuntary intoxication. The involuntary intoxication instruction erroneously states that Stacy has the burden to prove drugs or alcohol prevented him from forming the intent to assault, rather than stating Stacy did not know the nature and quality of his act. Mriglot, 88 Wn.2d at 576. We also note that neither the instruction proposed by the defense nor the involuntary intoxication instruction the court gave accurately states that involuntary intoxication is a defense only if Stacy shows involuntary intoxication rises to "to the level of insanity" and put him " 'in such a state of mind . . . that he does not know the nature and quality of his act or know that his act is wrong.' " Mriglot, 88 Wn.2d at 575, 576[9] (quoting LAFAVE & SCOTT, HANDBOOK ON CRIMINAL LAW, at 347-48).

Nonethelss, we conclude the erroneous instruction was harmless beyond a reasonable doubt. An instructional error is harmless if, beyond a reasonable doubt, the

---

[8] The record also shows that during closing, defense counsel argued that "[f]raud means that I have slipped [a drug] to you. You have not voluntarily taken that, and you should not be held responsible for things you do if you descend to the level of a crazy person."

[9] (Alteration in original.)

error did not contribute to the verdict obtained. State v. Brown, 147 Wn.2d 330, 344, 58 P.3d 889 (2002). "In deciding whether the error contributed to the verdict and whether it is harmless, the court must 'thoroughly examine the record' and may consider how the case is argued to the jury." State v. Johnson, 116 Wn. App. 851, 857, 68 P.3d 290 (2003)[10] (quoting Brown, 147 Wn.2d at 341).

First, as previously discussed, the jury instruction the court gave on involuntary intoxication lowered the defendant's burden of proof. The instruction did not require Stacy to prove by a preponderance of the evidence that he met the M'Naughten test for insanity. Further, the overwhelming evidence established Stacy was extremely intoxicated after voluntarily consuming only alcohol.

Officer Deisher testified Stacy's eyes were bloodshot, his speech slurred, and he smelled strongly of alcohol. Officer Deisher said that he is trained to detect signs of drug use and saw no signs that Stacy was on a drug. Officer Huycke testified that when he helped Officer Deisher handcuff Stacy, he noticed that Stacy smelled strongly of alcohol.

Officer Matt Headley also testified that he "observe[d] the odor of intoxicants" from Stacy and that Stacy's speech was slurred. Officer Epperson testified that Stacy was "very intoxicated," smelled strongly of alcohol, had "watery, bloodshot" eyes, and was staggering. Officer Epperson, who is also trained to recognize drug use, saw no signs of drug intoxication.

Hospital security officer Roush testified Stacy was "quite intoxicated, strong odor of alcohol on his person. The defiant, obstinate nature as well indicated alcohol intoxication to me." Nurse Mike Rogen also testified that Stacy was intoxicated and that

---

[10] (Footnote omitted.)

he did not notice anything in Stacy's behavior or vital signs that caused him to think Stacy might be under the influence of drugs.

Stacy produced no evidence that he had actually ingested any drugs, and according to his own expert witness, the evidence supporting Stacy's theory that he had been drugged was "speculative." Dr. Grimsbo testified that his opinion that a stimulant caused Stacy's behavior was an "educated guess" and was not based on a toxicology report. We conclude the instructional error was harmless beyond a reasonable doubt.

4. Response to Jury Question

Stacy argues the court violated his constitutional right to a public trial and his right to be present by submitting a response to a written question from the jury.

During deliberations, the jury submitted a written question asking when counsel was hired for the defendant. Five minutes later, the court responded in writing stating that "[a]fter affording all counsel/parties opportunity to be heard[,] [y]ou must rely on the evidence presented to you in the course of the trial."[11]

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution guarantee a defendant the right to a public trial. State v. Wise, 176 Wn.2d 1, 9, 288 P.3d 1113 (2012). The court reviews a claim of

---

[11] The Question from the Deliberating Jury and Court's Response states:
**JURY QUESTION:**    What date was the Defense Hired for the defendant?
<u>[/s/]</u>                 7-13-2012
Presiding Juror / Date
Date and time received by the Bailiff: <u>7/13/12   1:10</u>

**COURT'S RESPONSE:**    (After affording all counsel/parties opportunity to be heard.)
You must rely on the evidence presented to you in the course of the trial.
<u>[/s/]</u>
Judge
Date and time returned to the jury: <u>7/13/12   1:15</u>                          .
(Emphasis in original.)

violation of a public trial right de novo. Wise, 176 Wn.2d at 9. The defendant bears the burden of establishing a public trial right violation. State v. Sublett, 176 Wn.2d 58, 75, 292 P.3d 715 (2012) (plurality opinion).

The Washington Supreme Court's decision in Sublett is dispositive. In Sublett, the Washington Supreme Court held the trial court did not violate the defendant's right to a public trial by considering a jury question about a jury instruction with only counsel present in chambers. Sublett, 176 Wn.2d at 70, 77. Stacy argues that Sublett is distinguishable because the jury question in that case was a legal question about the jury instructions, while here, it was a factual question. But under the experience and logic test, Sublett's analysis focuses on " 'whether the place and process have historically been open to the press and general public,' " and " 'whether public access plays a significant positive role in the functioning of the particular process in question.' " Sublett, 176 Wn.2d at 73 (quoting Press-Enter. Co. v. Superior Court of Cal., 478 U.S. 1, 8, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986)). The factual nature of the jury's question does not alter this analysis.

Stacy also argues that the court violated his right to be present during a critical stage of the proceeding. A criminal defendant has the right to be present whenever the defendant's presence has a reasonably substantial relationship to the fullness of his opportunity to defend against the charge. In re Pers. Restraint of Benn, 134 Wn.2d 868, 920, 952 P.2d 116 (1998). The crux "of the constitutional right to be present is the right to be present when evidence is being presented." In re Pers. Restraint of Lord, 123 Wn.2d 296, 306, 868 P.2d 835 (1994). The defendant, therefore, does not have a right to be present during an in-chambers conference between the court and counsel on legal

matters. Lord, 123 Wn.2d at 306. Further, as in State v. Jasper, 174 Wn.2d 96, 124, 271 P.3d 876 (2012), the jury question form states the court answered the question only "[a]fter affording all counsel/parties [the] opportunity to be heard," and nothing in the record indicates whether Stacy was present when the court considered the question from the deliberating jury. We conclude Stacy does not meet his burden to establish a violation of his right to be present.

We affirm.

WE CONCUR: