# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47489-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JOSEPH RAYMOND WHEARTY, | |
| Appellant. | |

BJORGEN, C.J. — A jury returned verdicts finding Joseph Raymond Whearty guilty of

unlawful imprisonment and fourth degree assault. The jury also returned special verdicts finding

that Whearty committed both offenses against a member of the same family or household and

that he committed unlawful imprisonment within the sight or sound of the victim's minor

children. Whearty appeals his convictions, asserting (1) the trial court erred by failing to give a

unanimity instruction as to the unlawful imprisonment charge, (2) the trial court's exclusion of

video evidence violated his constitutional right to present a defense, (3) defense counsel was

ineffective for failing to adequately impeach an alleged victim, and (4) the trial court erred by failing to admit hearsay evidence under ER 106. We affirm.

FACTS

Whearty and Chelcie Dalmeny were in a dating relationship and lived together with Dalmeny's two daughters, OD and SJ.[1][2] Whearty and Dalmeny were involved in mixed marital arts (MMA) competitions, and both participated in MMA matches during the weekend of January 24, 2015. Whearty acted as Dalmeny's corner man[3] during her match. Dalmeny won the match and received several injuries as a result. Specifically, Dalmeny fractured her left hand and had bruising on both legs and around her eyes.

Whearty and Dalmeny disagree about the January 27 incidents leading to Whearty's charges in the present case. According to Dalmeny, she and Whearty were arguing on the morning of January 27. Whearty left the house that morning with Dalmeny's cell phone. Dalmeny used another cell phone to send Whearty a Facebook message that stated she wanted to end their relationship. After continuing to argue through Facebook messages, Whearty eventually stated that he would pack up his belongings. Dalmeny returned to the house that afternoon and saw that Whearty was still there. Dalmeny told Whearty that she was serious about breaking up and then left with her daughters. Whearty appeared to be sober when Dalmeny left the house.

---

[1] At the time of trial, OD was nine years old and SJ was two years old.

[2] We change the minors' names to initials to provide confidentiality.

[3] According to trial testimony a "corner man" is the "person that attends to [the fighter] in between rounds." Report of Proceedings (RP) at 49.

When Dalmeny and her daughters returned to the house later that evening, Whearty appeared to be intoxicated. Dalmeny told her daughters to play in their room; Dalmeny went to her room and lay on her bed. Whearty ran in the room, screamed at Dalmeny, put his fist on her throat, and punched her in the head. SJ jumped on Whearty, and Whearty pushed her away. At this point, Dalmeny was able to get out from under Whearty. Whearty then kicked Dalmeny, rolled the mattress on top of her, and jumped on her. Dalmeny got out from the mattress and picked up SJ. Whearty grabbed SJ and threw her on the bed. He then grabbed Dalmeny and threw her at a window. He also grabbed and twisted Dalmeny's wrist. Dalmeny managed to get ahold of SJ and leave the room. She yelled for OD, grabbed a diaper bag, and attempted to leave the house. Whearty grabbed the diaper bag and emptied its contents on the floor. Dalmeny tried to calm Whearty, and his mood fluctuated between "crazy, screaming" to cooperative. Report of Proceedings (RP) at 66.

When Dalmeny went to her car,[4] Whearty attempted to get the car keys from her purse. Whearty restrained Dalmeny against the garage with his arm, but relented after Dalmeny screamed for their landlord. Dalmeny and her daughters got in her car, but Whearty blocked their exit by lying down and positioning his neck under one of the back tires, stating that Dalmeny would have to kill him if she wanted to leave. Whearty moved after Dalmeny revved the engine. As Dalmeny drove down the driveway, Whearty jumped on the car and repeatedly hit the windshield. The windshield cracked in several spots, and glass hit Dalmeny and the children. Whearty eventually got off of the vehicle when another vehicle approached.

---

[4] Whearty's friend, Sharon Johnson, lent this car to Dalmeny.

3

Whearty admitted that he and Dalmeny were arguing on the morning of January 27 and that he took Dalmeny's cell phone when he left the house. However, in contrast to Dalmeny's account, Whearty stated that Dalmeny did not mention breaking up until she came home that afternoon. Whearty felt confused when Dalmeny asked him why he was still at the house, and after she left with her children, Whearty became depressed and drank two and a half beers. Whearty again felt confused when Dalmeny returned that evening and asked why he was still there. Whearty stated that he did not leave the house, because he and Dalmeny always seemed to work things out, and that he went in to the bedroom so that he could smoke marijuana with Dalmeny. According to Whearty, Dalmeny hit him in the face when he grabbed Dalmeny's pipe. Dalmeny continued to swing at Whearty, so he grabbed her hands, pushed her, and fell on top of her. Whearty denied pushing his fist against Dalmeny's throat, hitting her on the head, twisting her wrist, throwing her at a window, or wrapping her in a mattress. Whearty struggled with Dalmeny over the car keys because he was concerned about her driving with her daughters while high on "pills and weed." RP at 282. He put his arm against her chest and pushed her to the ground because she was swinging at him with her left hand. Whearty admitted to jumping on the car, stating that he did so to prevent Dalmeny from driving with the children while intoxicated.

Dalmeny drove to a store in Onalaska and called her sister, Sarah Dalmeny. Sarah[5] told Dalmeny that she would meet her at their father's house. After Sarah and Dalmeny arrived at their father's house, they called the police. Lewis County Sheriff's Deputy Michael Mohr responded to their call, took a recorded statement from Dalmeny, and photographed her injuries

---

[5] Because Sarah and Chelcie Dalmeny share a last name, we refer to Sarah by her first name for clarity.

and the damage to her car, which photographs were later admitted at trial. Later that evening, Mohr went to Dalmeny's house and arrested Whearty. On February 19, 2015, the State charged Whearty by amended information with unlawful imprisonment, second degree assault by strangulation or suffocation for his alleged conduct against Dalmeny, and second degree assault with intent to commit a felony for his alleged conduct against SJ.

Before trial, the trial court held a CrR 3.5 hearing to determine the admissibility of Whearty's statements to police. Mohr testified at the CrR 3.5 hearing that Whearty repeatedly said "he didn't do anything" while being transported to the jail and again at the jail. RP at 30. Mohr also testified that while he was being transported to the jail, Whearty stated, "She hit me, and I'm going to jail." RP at 35. The trial court ruled that Whearty's statements were admissible.

At trial, Whearty and Dalmeny testified consistently with the facts as they recounted them above. Additionally, both testified extensively about Dalmeny's MMA training and about the details of her MMA match on the weekend of January 24. After Dalmeny testified, defense counsel requested to show the jury a video from her MMA match. Defense counsel argued that the video was admissible as character evidence under ER 404(a)(2) and ER 405(b) and that the evidence was necessary to support Whearty's self-defense claim because the video showed Dalmeny's ability to fight. The State argued that the video was not relevant because no evidence had yet been presented that Whearty acted in self-defense. The State also argued that the video was highly prejudicial and was cumulative to the testimony regarding her participation in the MMA match. The trial court agreed with the State and excluded the video evidence, stating:

> The balancing here comes out in favor of excluding this [video]. The fact that she was involved in a competition with another woman in a ring where there were rules involved has nothing to do with an alleged assault by somebody who weighs 45 pounds more than her in a situation where there are no rules, when she has an injury

5

that prevents her from fighting back. So, no, I'm not going to allow this. I agree with the State on that one.

RP at 167-68.

During Mohr's testimony on cross-examination, the following exchange took place:

[Defense counsel]: In the car did you ask his side of the story?
[Mohr]: No.
[Defense counsel]: Did he try to give you his side of the story?
[Mohr]: No. He was just screaming and crying.
[Defense counsel]: He didn't try to give his side of the story?
[Mohr]: No.
[Defense counsel]: He didn't tell you she had hit him?
[State]: Objection; calls [for] hearsay.
[Trial court]: Sustained.
[Defense counsel]: I think it goes to impeachment, Your Honor, which is . . .
[Trial court]: Not like that, it doesn't. The objection is sustained.
[Defense counsel]: While he was in the car did Mr. Whearty express some sort of disbelief as to why he was in the car and arrested?
[State]: Objection; hearsay.
[Trial court]: Sustained.
[Defense counsel]: It's a yes or no question, Your Honor. I'm not asking him to answer what he said.
[Trial court]: The objection is sustained. The way that question was phrased it does ask for a specific response, so objection's sustained.
[Defense counsel]: So you get to the jail and you try to ask him his side of the story then, right?
[Mohr]: Yes.
[Defense counsel]: And just more crying?
[Mohr]: Yes.

RP at 231-32.

The trial court instructed the jury on fourth degree assault as inferior degree offenses to Whearty's second degree assault charges. The jury returned verdicts finding Whearty not guilty of second degree assault by strangulation or suffocation but guilty of fourth degree assault as an inferior degree offense to that charge. The jury also returned verdicts finding Whearty guilty of unlawful imprisonment, not guilty of second degree assault with intent to commit a felony, and

6

not guilty of fourth degree assault as an inferior degree offense to the second degree assault with the intent to commit the felony charge. Additionally, the jury returned special verdicts finding that Whearty committed unlawful imprisonment and fourth degree assault against a member of the same family or household and that he committed unlawful imprisonment within the sight or sound of the victim's minor children. Whearty appeals from his convictions of unlawful imprisonment and fourth degree assault. We affirm.

ANALYSIS

I. UNANIMITY INSTRUCTION

Whearty first contends that the trial court erred by failing to give a unanimity instruction with regard to his unlawful imprisonment charge because the State alleged several acts that could have supported a conviction on the charge. Because all of the acts alleged by the State were part of the same continuous course of conduct, a unanimity instruction was not required and, thus, Whearty fails to show manifest error allowing him to raise this issue for the first time on appeal.

Whearty did not request a unanimity instruction at trial, but he argues that he may challenge the trial court's failure to sua sponte provide a unanimity instruction under RAP 2.5(a)(3). We disagree.

RAP 2.5(a)(3) permits this court to address an issue raised for the first time on appeal if the issue concerns a "manifest error affecting a constitutional right." A trial court's failure to provide the jury with a required unanimity instruction is of constitutional magnitude. *State v. Bobenhouse*, 166 Wn.2d 881, 893, 214 P.3d 907 (2009). However, the failure to provide a required unanimity instruction is manifest only where it had "practical and identifiable consequences" at trial. *State v. Gordon*, 172 Wn.2d 671, 676, 260 P.3d 884 (2011) (internal

quotation marks omitted) (quoting *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009)). "Each of these requirements demands that the alleged action, in this case the omission of a unanimity instruction, in fact be in error." *State v. Locke*, 175 Wn. App. 779, 802, 307 P.3d 771 (2013), *review denied*, 179 Wn.2d 1021 (2014).

When the State alleges multiple acts that could support a conviction on a single charge, the jury may convict on that charge only if it unanimously agrees on the particular conduct underlying the conviction. *Locke*, 175 Wn. App. at 802. However, where the acts alleged by the State are part of a continuing course of conduct, no unanimity instruction is required. *Locke*, 175 Wn. App. at 803. When determining whether the defendant's multiple acts were part of a continuing course of conduct, "we evaluate the facts in a commonsense manner, considering (1) the time separating the criminal acts and (2) whether the criminal acts involved the same parties, location, and ultimate purpose." *State v. Brown*, 159 Wn. App. 1, 14, 248 P.3d 518 (2010).

Here, the State's allegations that Whearty unlawfully restrained Dalmeny by (1) pinning her to the bed, (2) wrapping her in a mattress, (3) taking the diaper bag from her, (4) pinning her against the ground, (5) placing his neck behind the tire of her car, and (6) jumping on top of her car were all part of a continuing course of conduct. The alleged acts all took place within a short time period, and all took place within Dalmeny's home or just outside the home, involved the same parties, and were committed to achieve the same objective—to prevent Dalmeny from leaving her property. Therefore, evaluating the facts in a common sense manner, we hold that the multiple acts alleged by the State constituted a continuing course of conduct. Whearty thus fails to demonstrate that the trial court erred by failing to provide a unanimity instruction.

Accordingly, he fails to show a manifest constitutional error allowing him to raise this claim for the first time on appeal under RAP 2.5(a)(3).

## II. RIGHT TO PRESENT A DEFENSE

Next, Whearty contends that the trial court's evidentiary ruling prohibiting defense counsel from showing the jury a video of Dalmeny's MMA match violated his right to present a defense. Again, we disagree.

A defendant in a criminal trial has a constitutional right to present a defense. *State v. Rehak*, 67 Wn. App. 157, 162, 834 P.2d 651 (1992). However, a criminal defendant's right to present a defense is not absolute; a defendant seeking to present evidence must show that the evidence is at least minimally relevant to a fact at issue in the case. *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401.

If the defendant establishes the minimal relevance of the evidence sought to be presented, the burden shifts to the State "to show the evidence is so prejudicial as to disrupt the fairness of the fact-finding process at trial." *State v. Darden*, 145 Wn.2d 612, 622, 41 P.3d 1189 (2002). A trial court must then balance "the State's interest to exclude prejudicial evidence . . . against the defendant's need for the information sought," and may exclude such evidence only where "the State's interest outweighs the defendant's need." *Darden*, 145 Wn.2d at 622. We review de novo a claim that a trial court's evidentiary ruling violated a defendant's right to present a defense. *Jones*, 168 Wn.2d at 719.

Whearty asserts that video evidence of Dalmeny's MMA match was relevant to his self-defense claim because the video showed Dalmeny's ability to fight and inflict injury. Assuming for the sake of argument that Whearty is correct regarding the video's relevance, the trial court nonetheless properly conducted the appropriate balancing test to exclude the video. Whearty's need for the information contained in the video was minimal, as there was extensive testimony at trial describing Dalmeny's MMA training and the details of her MMA match on the weekend of January 24. On the other hand, the video was prejudicial in that it showed Dalmeny engaged in acts of physical violence in a sanctioned MMA fight, a situation entirely removed from Whearty's claim that she had suddenly struck him after taking her marijuana pipe. Because the evidence was sufficiently prejudicial under *Darden* and the State's interest in excluding the prejudicial evidence outweighed Whearty's need for the information contained in the video, we hold that the trial court's ruling excluding the evidence did not violate Whearty's right to present a defense. *Darden*, 145 Wn.2d at 622.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, Whearty asserts that his defense counsel provided ineffective assistance by failing to adequately impeach Dalmeny (1) with her inconsistent statements about where on her head Whearty had hit her and (2) about her testimony that her daughters did not exit the car while Whearty was at a store calling Sarah, which testimony conflicted with Sarah's and OD's testimony that OD had exited the car to purchase something from the store.[6] We disagree.

---

[6] Although Whearty titles this section of his brief, "Defense counsel provided ineffective assistance in failing to impeach the complaining witness and arresting officer," he neither assigns error to the failure to impeach Mohr nor provides any argument on that ground. Suppl. Br. of Appellant at 16. Accordingly, we do not address it.

10

To demonstrate ineffective assistance of counsel, Whearty must show both deficient performance and resulting prejudice. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). To show deficient performance, Whearty must show that defense counsel's performance fell below an objective standard of reasonableness. *Reichenbach*, 153 Wn.2d at 130. To show resulting prejudice, Whearty must show a reasonable probability that, but for counsel's purportedly deficient performance, the outcome of his trial would have differed. *Reichenbach*, 153 Wn.2d at 130. If he fails to make either showing, we need not inquire further. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

Additionally, we strongly presume that counsel's performance was reasonable and, to rebut this presumption, "the defendant bears the burden of establishing the absence of any '*conceivable* legitimate tactic explaining counsel's performance.'" *State v. Grier*, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011) (emphasis added) (quoting *Reichenbach*, 153 Wn.2d at 130), *cert. denied*, 135 S. Ct. 153 (2014). Ineffective assistance of counsel claims present mixed questions of law and fact, which we review de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

Whearty first contends that his defense counsel was ineffective for failing to impeach Dalmeny about inconsistencies in her statements regarding where on her head Whearty had allegedly hit her. We disagree. Dalmeny testified on direct examination that Whearty "started punching me in the back of the head." RP at 62. Then, on cross-examination, Whearty's defense counsel confronted Dalmeny about this testimony during the following exchange:

> [Defense counsel]:    Now, when you were on direct examination yesterday, you pointed to the top of your head like this. Is that where he hit you, on the top of your head?
> [Dalmeny]:            No. It was like here, the back of the head, the side.

11

| [Defense counsel]: | Okay. The side behind the ear? |
| [Dalmeny]: | Yes. |
| [Defense counsel]: | He hit you in the front side of the head? |
| [Dalmeny]: | No. It was like here on the back side of the head. |
| [Defense counsel]: | But it was the head for sure? |
| [Dalmeny]: | Yes. |

RP at 145. Defense counsel then confronted Dalmeny about her statement to police that Whearty had punched her "in the side of the face." RP at 146. Defense counsel argued during closing that Dalmeny was not a credible witness in light of her inconsistent statements regarding the location on her head where Whearty had allegedly hit her. Because defense counsel impeached Dalmeny about her inconsistent statements, Whearty's claim that defense counsel was ineffective for failing to do so lacks merit.

Next, Whearty appears to argue that his defense counsel was ineffective for failing to confront Dalmeny about how her testimony had differed from Sarah and OD's testimony regarding whether OD had exited the car when Dalmeny called Sarah while parked at a store. Again, we disagree.

Dalmeny testified that neither of her daughters had exited the car while she was parked at the store speaking with Sarah. In contrast with this testimony, OD testified that she exited the car to purchase a bottle of water for her mother and a hairbrush for herself. Sarah also testified that, while speaking with Dalmeny, Dalmeny had told her OD was in the store purchasing something. Although Dalmeny's testimony differed from that of Sarah and OD, defense counsel had a legitimate tactical reason for not recalling Dalmeny to confront her about her earlier testimony. The contrasting testimony was already heard by the jury, and recalling Dalmeny to confront her about it would only serve to allow Dalmeny to correct her earlier testimony. Rather than presenting Dalmeny with the opportunity to correct her earlier testimony, defense counsel

could have conceivably made the tactical decision to let her testimony go uncorrected and then argue that she was not a credible witness during closing argument. Defense counsel made this argument at closing, stating:

> But what's Sarah tell you that [Dalmeny] leaves out? Because she was so traumatically disturbed by this event that it was good it didn't come out from her. She stopped at the Justice Store, sent [OD], who is so traumatized by this event apparently, sends her into the store and [OD] buys some water for her mom and a hairbrush. That's what Sarah tells you. That's also what [OD] told you. [OD] told you exactly what she went in and bought.

RP at 504-05. Because defense counsel had a legitimate tactical reason for not confronting Dalmeny with her testimony that OD did not exit the car while at the store, Whearty cannot demonstrate ineffective assistance on this ground.

## IV. ER 106

Finally, Whearty contends that the trial court erred by sustaining the State's hearsay objections when defense counsel sought to elicit testimony from Mohr about what Whearty had told him while being transported to jail. Specifically, Whearty argues that the trial court was required to admit the hearsay testimony under ER 106. This argument fails for two reasons. First, Whearty did not argue at trial that his hearsay statements to Mohr were admissible under ER 106, and he cannot do so now for the first time on appeal. *See, e.g.*, *State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985) ("A party may only assign error in the appellate court on the specific ground of the evidentiary objection made at trial."). Second, ER 106[7] applies only to

---

[7] ER 106 provides:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the party at that time to introduce any other part, or any other writing or recorded statement, which ought in fairness to be considered contemporaneously with it.

written or recorded statements and does not apply to oral testimony. *State v. Perez*, 139 Wn. App. 522, 531, 161 P.3d 461 (2007).

Additionally, Whearty appears to argue that the trial court erred in sustaining the State's hearsay objections because Whearty's statements to Mohr were not hearsay under ER 801(d)(1)(ii).[8] Again, Whearty's argument fails. First, Whearty did not argue at trial that his statements to Mohr were not hearsay under ER 801(d)(1)(ii) and cannot do so for the first time on appeal. *See State v. Stacy*, 181 Wn. App. 553, 568, 326 P.3d 136 (declining to address for the first time on appeal appellant's argument that his statements to police were admissible under ER 801(d)(1)(ii)), *review denied*, 181 Wn.2d 553 (2014). Further, by its terms ER 801(d)(1)(ii) did not apply to Mohr's testimony during the State's case in chief, because Whearty, as the declarant of the statement sought to be admitted, had not yet testified at trial.

Therefore, we hold that Whearty has not preserved his specific contentions with the trial court's hearsay ruling, and he cannot raise them for the first time in this appeal. Alternatively, we hold that Whearty's contentions with the trial court's hearsay rulings lack merit.

For these reasons, we affirm Whearty's convictions of unlawful imprisonment and fourth

---

[8] ER 801(d)(1)(ii) provides in relevant part:
    (d) A statement is not hearsay, if
    (1) . . . [t]he declarant testifies at the trial or hearing and is subject to cross examination concerning the statement, and the statement is . . .
    ii. consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.

No. 47489-1-II

degree assault.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, C.J.
BJORGEN, C.J.

We concur:

Johanson, J.
JOHANSON, J.

Lee, J.
LEE, J.